

FILED
5/23/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 226-3 |
| v. | Judge Virginia M. Kendall |
| ROSALLIE C. CORVITE | |

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant ROSALLIE C. CORVITE, and her attorney, DOUGLAS WHITNEY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.    The fourth superseding indictment in this case charges defendant with conspiracy to commit offenses against the United States, in violation of Title 18, United States Code, Section 371 (Counts One and Two), and making false entries in the books of a financial institution, in violation of Title 18, United States Code, Section 1005 (Counts Five and Six).

3.    Defendant has read the charges against her contained in the fourth superseding indictment, and those charges have been fully explained to her by her attorney.

4. Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the fourth superseding indictment: Count One, which charges defendant with conspiracy to commit offenses against the United States, in violation of Title 18, United States Code, Section 371.

## Factual Basis

6. Defendant will plead guilty because she is in fact guilty of the charge contained in Count One of the fourth superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

Defendant ROSALLIE C. CORVITE was employed by Washington Federal Bank for Savings, first, in 2003, as a teller; then, in 2005, as an accounting clerk and accounting assistant. In 2011, CORVITE became the Chief Financial Officer (CFO). CORVITE's duties as CFO included maintaining the bank's general ledger, which included managing the income and expenses of the bank on the general ledger; preparing financial reports; preparing call reports; and providing information to auditors, consultants, and regulators. CORVITE also was involved in approving wire transfers and in generating checks from the bank's operating account. While CFO, CORVITE was also part of the Audit, Compliance, and Asset-Liability Committees.

Beginning in at least 1989, the deposits of Washington Federal were insured by the Federal Deposit Insurance Corporation (FDIC). Washington Federal was required to regularly provide to the FDIC documentation of its financial condition, including Call Reports setting out, among other things, the performance of the bank's loan portfolio and the bank's income.

Beginning in approximately 2011, Washington Federal was supervised by the Office of the Comptroller of the Currency (OCC) which regularly monitored and conducted periodic examinations of the operations of Washington Federal. The OCC reviewed and relied on loan documentation and other records Washington Federal contemporaneously created during the course of its operations. The OCC also reviewed and relied on documents that Washington Federal created for the purpose of providing them to the OCC and the FDIC, such as Call Reports and trial loan balances, which disclosed delinquencies, compliance with lending limitations, and loan histories. The OCC also reviewed and relied upon reports and audits generated by third-party auditors of and consultants to Washington Federal, including Consultant A.

Individual A was President, Chief Executive Officer, and Chairman of the Board of Directors of Washington Federal and the direct supervisor of CORVITE. James R. Crotty was employed by Washington Federal as Vice President. Jane V. Iriondo, fka Jane V. Tran (Iriondo), was employed by Washington Federal, first, in 1999, as a teller; then, in 2003, as executive secretary for Individual A; and, finally,

3

in 2006, as Corporate Secretary. Alicia Mandujano was employed by Washington Federal first, as a teller; then, as the secretary to the president; and, finally, as a loan servicer. Cathy M. Torres was employed by Washington Federal in positions which included a loan officer.

Beginning in at least in or around 2011 and continuing until in or around December 2017, at Chicago, defendant ROSALLIE C. CORVITE knowingly conspired in violation of Title 18, United States Code, Section 371, with Individual A, Crotty, Torres, Mandujano, Iriondo, Robert M. Kowalski, Boguslaw Kasprowicz, Miroslaw Krejza, Marek Matczuk, and others: (a) to knowingly make false entries in the books, reports, and statements of Washington Federal, with intent to injure and defraud Washington Federal and to deceive the OCC and the FDIC, in violation of Title 18, United States Code, Section 1005; and (b) being an officer, director, agent, or employee of, or connected in any capacity to Washington Federal, with intent to injure and defraud Washington Federal, to embezzle and willfully misapply moneys, funds, and credits of Washington Federal and moneys, funds, assets, and securities intrusted to the custody and care of Washington Federal, in violation of Title 18, United States Code, Section 656.

For approximately seven years, ending in December 2017, CORVITE  agreed with Individual A, Iriondo, Torres, Mandujano, and Crotty to embezzle and misapply money from Washington Federal, which ultimately totaled approximately $66 million, to distribute the embezzled money to and for the benefit of Robert M.

Kowalski, Kasprowicz, Krejza, Matczuk, William Kowalski, and others, and to conceal the embezzlement by falsifying Washington Federal's records, creating false documents, and providing false records and documents to the FDIC, the OCC, consultants and others.

*Falsifying Internal Bank Records to Conceal Embezzlement*

While employed at Washington Federal, CORVITE, on the instructions of Individual A, knowingly made and caused to be made false entries in the books, reports, and statements of Washington Federal, understanding that the effect of which would be to injure and defraud Washington Federal and to deceive the OCC and the FDIC as to the actual financial condition of Washington Federal, by materially understating the number of delinquent and nonperforming loans, and inflating Washington Federal's income.

*Providing False Records to Consultants*

CORVITE, along with Individual A and others, provided and caused to be provided false information to consultants regarding loans, including to Consultant A, whose reports were provided to the OCC during examinations, which loan information was false in that maturity dates of loans were altered to conceal that the purported loans to defendant Robert M. Kowalski and others were not performing.

As an overt act, on or about May 30, 2013, defendant ROSALLIE CORVITE sent and caused to be sent to Consultant A an email which falsely represented the maturity dates of a number of loans related to defendant Robert M. Kowalski.

*Providing False Records to the FDIC*

CORVITE, along with Individual A and others, provided and caused to be provided false Call Reports to the FDIC, which Call Reports included schedules that omitted and concealed delinquent loans, including the purported loans to defendants Robert M. Kowalski, Kasprowicz, Krejza, Matczuk, and William A. Kowalski, and others, and inflated the bank's income.

As an overt act, on or about October 30, 2017, CORVITE filed and caused to be filed a Call Report with the FDIC which falsely stated on Schedule RC-N that there were approximately $218,000 worth of loans that were 30-89 days delinquent and no loans that were 90 days or more delinquent, when, as CORVITE knew, the bank had millions of dollars in loans that were more than 90 days delinquent.

*Providing False Records to the OCC*

CORVITE  along with Iriondo, Mandujano, and Torres, and others, provided and caused to be provided false trial loan balances to the OCC, which trial loan balances contained false information about Washington Federal's loans, including the identity of the borrower, fictitious loan balances, and payment histories, and omitted purported loans associated with defendants Robert M. Kowalski, Kasprowicz, Krejza, and Matczuk, and others.

As an overt act, in or around October 2017, CORVITE, on the instructions of Individual A and along with Iriondo, Torres, and Mandujano, created a false 2017 trial loan balance purporting to be a list of all of Washington Federal's loans and

provided it to the OCC. This trial loan balance contained false information about Washington Federal's loans, including the identity of the borrower, loan balances, and payment histories, and omitted purported loans associated with Robert M. Kowalski, Kasprowicz, Krejza, Matczuk, and others.

*Failure of Washington Federal*

In or around December 2017, the OCC determined that Washington Federal was insolvent and that it had at least approximately $66 million in nonperforming loans. On or about December 15, 2017, the OCC closed Washington Federal and the FDIC, as a receiver, succeeded to all of Washington Federal's interests. The FDIC provided approximately $90 million to make account holders whole to the extent allowed by law. CORVITE further acknowledges at least ten account holders who had deposits at Washington Federal over the FDIC insurance limit also suffered losses when Washington Federal failed.

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

7

## **Maximum Statutory Penalties**

8.      Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

## **Sentencing Guidelines Calculations**

9.      Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the

8

defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

   a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the November 2021 Guidelines Manual.

   b.     **Offense Level Calculations**.

      i.     The base offense level, pursuant to Guideline §§ 2B1.1(a)(1) and 2X1.1, is 7.

      ii.     Pursuant to Guideline § 2B1.1(b)(1)(M), the offense level is increased by 24 levels because the loss is between $65 million and $150 million.

      iii.     Pursuant to Guideline § 2B1.1(b)(2)(A)(i), the offense level is increased by 2 levels because the offense involved ten or more victims.

      iv.     Pursuant to Guideline § 2B1.1(b)(10)(C), the offense level is increased by 2 levels because the offense involved sophisticated means and defendant engaged in conduct constituting sophisticated means.

9

v.      Pursuant to Guideline § 2B1.1(b)(17)(B)(i), the offense level is increased by 4 levels because the offense substantially jeopardized the safety and soundness of a financial institution.

vi.      Pursuant to Guideline § 3B1.3, the offense level is increased by 2 levels because defendant abused a position of trust with Washington Federal.

vii.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

viii.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government anticipates that the total offense level is 38. When combined with the anticipated criminal history category of I, the anticipated advisory Sentencing Guidelines range is 235-293 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. However, pursuant to Guideline § 5G1.1(a), when the statutory maximum sentence is less than the minimum of the applicable Guidelines range, the statutory maximum sentence shall be the Guideline sentence. Therefore, the advisory Guideline sentence is 60 months' incarceration.

e. Defendant and her attorney and the government acknowledge that the above guidelines calculations are preliminary in nature and based on facts known to the parties as of the time of this Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's

11

concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

11.     Defendant agrees she will fully and truthfully cooperate in any matter in which she is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of her sentencing until after the conclusion of her cooperation.

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation.  If the government determines

12

that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward and impose a sentence below the applicable Guideline sentence, in an amount to be determined at sentencing. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline sentence rests solely with the Court.

13.     If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline sentence, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw her plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

15.     Regarding restitution, defendant acknowledges that she is obligated to pay restitution to victims in an amount to be ordered by the Court, minus any credit

13

for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing. Defendant reserves the right to argue that restitution should be apportioned, pursuant to Title 18, United States Code, Section 3664(h).

16.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), she is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect her ability to pay restitution.

17.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

19.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the fourth superseding indictment and its forfeiture allegation, as well as the third and second superseding indictment, as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 19 CR 226-3.

21.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

15

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the fourth superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b.     **Waiver of appellate and collateral rights**. Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In

addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

23.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

24.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

25.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26.     For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## **Other Terms**

27.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant.

29.     Defendant understands that pursuant to Title 12, United States Code, Sections 1785(d) and 1829, her conviction in this case will prohibit her from directly or indirectly participating in the affairs of any financial institution insured by the National Credit Union Share Insurance Fund or the Federal Deposit Insurance

Corporation, except with the prior written consent of the National Credit Union Administration Board or the FDIC and, during the ten years following her conviction, the additional approval of this Court. Defendant further understands that if she knowingly violates this prohibition, she may be punished by imprisonment for up to five years, and a fine of up to $1,000,000 for each day the prohibition is violated.

30.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

31.     Should defendant engage in additional criminal activity after she has pled guilty but prior to sentencing, defendant shall be considered to have breached this Agreement, and the government at its option may void this Agreement.

## Conclusion

32.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

33.     Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this

21

Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

34.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

35.     Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

36.     Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____

_____
/s/ *John R. Lausch, Jr.*, by TCM
JOHN R. LAUSCH, JR.
United States Attorney

_____
MICHELLE PETERSEN
Assistant U.S. Attorney

_____
BRIAN P. NETOLS
Assistant U.S. Attorney

_____
JEREMY DANIEL
Assistant U.S. Attorney

_____
JEFFREY SNELL
Special Assistant U.S. Attorney

_____
ROSALLIE C. CORVITE
Defendant

_____
DOUGLAS WHITNEY
Attorney for Defendant

23